IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STARR ROSE OCEGUERA,

        Plaintiff,

v.                                                                                         Civ. No. 14-574 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

        Respondent.

**ORDER DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND**

THIS MATTER is before the Court on Plaintiff Starr Rose Oceguera's Motion to Reverse the Social Security Administration Commissioner's final decision denying Plaintiff disability insurance benefits. *Doc. 22*. Having reviewed the Motion and being otherwise fully advised, the Court finds Plaintiff's arguments in favor of reversal unpersuasive and the Court will, therefore, **DENY** Plaintiff's Motion as further discussed below.

**I.    BACKGROUND**

    *A.  Plaintiff's Medical History*

Plaintiff Starr Rose Oceguera is a 29-year old woman with a long history of seizures, unexplained abdominal pain, and various mental health issues, such as depression and mood disorder. *Doc. 15*, Administrative Record ("AR") at 384, 533, 537, 599, 635. In March 2012, while she was pregnant with her fourth child, Ms. Oceguera began experiencing chest pain and shortness of breath. AR 429-430. She sought treatment at McLeod Medical Center, where Jeremy Edmonds, D.O. assessed her and sent her to the hospital for evaluation for a possible pulmonary embolism. *Id.* At the hospital, Ms. Oceguera received a CT scan confirming that she

was suffering from a right pulmonary embolism. AR 314. The hospital started her on anticoagulation therapy. AR 348. Other tests came back positive for "lupus-like inhibitor," but the hospital notes indicate that "it [was] unclear whether this [was] an acute reactant due to pregnancy and the pulmonary embolus, or if this [was] an underlying condition." AR 328-329. Due to her pregnancy and the pulmonary embolism, Julian Rowe, M.D., one of the Presbyterian Hospital doctors, referred Ms. Oceguera to Pinon Perinatal for a prenatal consultation, which Ms. Oceguera received in May 2012. AR 496-501.

In April 2012, Ms. Oceguera returned to Presbyterian Hospital twice because of abdominal pain. AR 358-375. On September 28, 2012, she gave birth, via cesarean section, to her fourth child. AR 675. She was discharged from the hospital October 2, 2012, with notes that she had "evidence of seizure activity" postpartum. *Id.* She visited to the hospital once again on October 13, 2012 because she was experiencing abdominal pain. AR 694-697.

Shortly thereafter, on October 30, 2012, Ms. Oceguera returned to the McLeod Medical Center and began seeing Timothy Klein, M.D. as her primary care physician. AR 708-710. Throughout the fall, she had several appointments with Dr. Klein during which she sought treatment for abdominal pain, problems with her vision, headaches, and anxiety. AR 698-710. During these visits, she asked Dr. Klein about getting a personal care assistant to help her with home tasks made difficulty by her epilepsy and other health problems. AR 698, 708. On December 10, 2012, Dr. Klein completed a Long Term Care Assessment of Ms. Oceguera, in which he checked that she needed help with ambulation, transfer, personal hygiene, and control safety. AR 719. He also indicated (in check box form) that she suffered from a sight impairment, had mostly disoriented mental processes, engaged in inappropriate and passive behavior, avoided others, and attended few planned activities. *Id.* He marked that her "patient status" was unstable.

*Id.* According to his handwritten notes, Ms. Oceguera suffered from severe chronic pain, anxiety disorder, and uncontrolled seizure disorder. AR 720. Roughly three months later, in March 2013, Ms. Oceguera was found eligible for personal care services. AR 722-744. While the exact relationship between this decision and Dr. Klein's Long Term Care Assessment is opaque, the parties agree that the nurse and other professionals who approved Ms. Oceguera's request for personal care services considered Dr. Klein's Assessment. *Doc. 22* at 4-5; *doc. 27* at 4.

On December 3, 2012, Kenneth Mladinich, M.D., a doctor at PMG Neurology, evaluated Ms. Oceguera for seizure disorder. AR 457. He concluded that she had "chronic refractory seizures, may be [sic] pseudoseizures" and recommended that she get an EEG.[1] AR 459. Around the same time period, December 2012, Ms. Oceguera attended an appointment at First Care Edgewood to establish a new primary care doctor. AR 714. During this appointment, she reported that she was continuing to experience anxiety and abdominal pain. *Id.*

Richard Reed, Ph.D., a licensed psychologist, evaluated Ms. Oceguera in February 2013. AR 477-479. In his report, he listed Ms. Oceguera's diagnoses as generalized mood disorder, dependent traits, "reports chronic pain," epilepsy, economic problems, and occupational problems. AR 478. He found that Ms. Oceguera was moderately limited in her ability to (1) understand and remember detailed instructions, (2) carry out instructions, (3) concentrate and persist at basic tasks, (4) interact with supervisors, (5) adapt appropriately to changes in the work place, and (6) utilize public transportation to unfamiliar places. He also found that Ms. Oceguera was mildly limited in her ability to (1) understand and remember simple instructions, (2)

---

[1] The ALJ notes that Plaintiff reports that "she has not had laboratory workup or EEG" and that "she would be unable to follow up as requested due to limited resources." AR 16.  The ALJ further notes that "[t]he medical evidence of record does not reflect objective testing that supports epilepsy diagnosis, nor objective observations of seizure activity, despite the claimant's allegation of very frequent seizures and a several year history of seizures.  Dr. Mladinich's recent assessment is chronic refractory seizures or pseudo-seizures and appears to be based on the claimants [sic] reported frequently [sic], not on specific medical evidence." AR 16.

3

maintain attention and concentration, (3) interact with the general public, (4) interact with co-workers, (5) and be aware of and react to normal hazards. AR 479.

In the summer of 2013, Ms. Oceguera sought treatment at St. Martin's Hospitality Center for depression and anxiety. There, she was diagnosed with chronic posttraumatic stress disorder and recurrent major depressive disorder. Her initial diagnostic interview indicated that she possessed average intellectual functioning, had "good social skills," and could be "very high functioning and responsible," depending on her chronic physical pain and depression. AR 762-764. The notes from this interview indicate that Ms. Oceguera was currently in her third semester of college earning a degree in criminal justice. AR 770.[2] According to subsequent records from St. Martin's, treatment providers were encouraging her to finish her degree. AR 757-758. In fact, as of September 2013, her listed discharge criteria included acquiring her Criminal Justice degree and having a "steady job (provided she is physically able to)." AR 759.

## B. *Procedural History*

In May 2012, Ms. Oceguera filed Title II and XVI applications for disability insurance benefits and supplemental security income, alleging disability starting March 26, 2012. On December 17, 2013, ALJ Michelle Lindsay reviewed these claims at a hearing, where Ms. Oceguera testified. AR 21. The ALJ subsequently issued a written decision denying Ms. Oceguera's request for benefits. AR 6-19.

In making this decision, ALJ Lindsay determined (1) that Ms. Oceguera had not engaged in substantial gainful activity since March 26, 2012, the onset date of her alleged disability, AR 11; (2) that Ms. Oceguera had three severe impairments: seizure disorder, mood disorder, and dependent traits, AR 11; (3) that Ms. Oceguera's impairments did not meet or medically equal

---

[2] In December 2013, Ms. Oceguera testified that she was currently taking on-line classes at CNM and had been in school there for roughly a year. AR 26.

the severity of a listed impairment, so as to be automatically acknowledged as disabled, AR 12; (4) that Ms. Oceguera could perform a full range of work at all exertional levels with limitations on her ability to work near hazards and with limitations on her abilities to concentrate, follow complex instructions, adapt to changes, and interact with others, AR 13; and (5) that Ms. Oceguera, while unable to perform past relevant work, was able to perform a variety of jobs that exist in the national economy, AR 17-18. Based on these findings, ALJ Lindsay concluded that Ms. Oceguera was not disabled. AR 19.

Plaintiff appealed this decision to the Social Security Appeals Counsel, but her appeal was denied. On June 23, 2014, Plaintiff filed her complaint in the instant matter. *Doc. 1*.

## II.  APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v.*

*F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III.   ANALYSIS

Ms. Oceguera identifies two alleged errors in the ALJ opinion: (1) the ALJ improperly failed to give controlling weight to the opinion of Ms. Oceguera's treating physician Dr. Timothy Klein and (2) the ALJ neglected to explain her reasons for accepting or rejecting the opinion of Dr. Richard Reed. Ms. Oceguera argues that these errors necessitate a finding that the ALJ's opinion was not supported by substantial evidence. Ms. Oceguera does not, however, assert that there is any other basis for reversal. Because the Court finds that the ALJ properly considered the opinion of Dr. Reed and that any errors the ALJ made in weighing the opinion of Dr. Klein were harmless, the Court will affirm the denial of Ms. Oceguera's disability claim.

#### A.  *Any error in the ALJ's treatment of Dr. Klein's records was harmless.*

The Court agrees with a number of arguments Plaintiff makes with regard to Dr. Klein. First, Plaintiff argues that Dr. Klein was her treating physician. The Court agrees. He was, after all, designated as her primary care physician and she saw him on several occasions. A treating physician is a physician "'who has or has had an ongoing relationship' with a claimant, with

7

'ongoing relationship' defined as a relationship where the physician sees the claimant 'with a frequency consistent with accepted medical practice for the type of treatment and evaluation required [by the plaintiff's] medical condition(s).'" 20 C.F.R. § 404.1502. Dr. Klein's course of treatment fits within these criteria.

The Court also agrees that the ALJ did not thoroughly analyze Dr. Klein's opinion. The problem for Plaintiff, however, is that many of Dr. Klein's opinions, such as those that relate to her treatment for abdominal pain (a few months after Plaintiff had a Caesarian section) and vision difficulties, do not matter because these issues are not being asserted as a basis for disability. And, while the ALJ never specifically addressed Dr. Klein's opinions that do matter (such as those that relate to her mental state), those opinions do not conflict with the RFC and are adequately considered through the ALJ's analysis of other doctors.  Thus, any error the ALJ committed in failing to adequately address Dr. Klein's opinions is harmless.

The Court acknowledges that, according to the relevant regulations, an ALJ must accord controlling weight to the opinion of a treating physician as long as this opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).  Further, even if the ALJ finds that these criteria are not satisfied, the ALJ is still required to consider whether the treating source opinion "should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. The relevant factors in making this determination are "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and

the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). While an ALJ need not expressly discuss each of these factors, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), an ALJ must articulate her reasoning with sufficient particularly "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (internal quotations omitted).

The Court also recognizes that, even if Dr. Klein were not a treating physician, the ALJ would still be obligated to address her relevant opinions. 20 C.F.R. § 416.927; *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (an ALJ must evaluate every medical opinion in a claimant's record before issuing a disability benefits determination). When deciding whether to accept or reject the opinion of a non-treating medical provider, an ALJ considers whether the health care provider examined the claimant, the length and nature of the treatment relationship, how well supported the opinion is by tests or other evidence, the consistency of the opinion with the opinion of other medical professionals, the specialization of the provider, and any other relevant factors. *See* 20 C.F.R. § 416.927. These are the exact same factors that an ALJ must assess before rejecting the opinion of a treating physician. *Watkins*, 350 F.3d at 1301 (explaining that an ALJ must consider the factors listed in 20 C.F.R. § 416.927 before rejecting the opinion of a treating physician). In other words, the rejection of a non-treating medical provider's opinion, like the rejection of a treating-source opinion, is improper unless the ALJ articulates specific and legitimate reasons for the rejection. *Doyal*, 331 F.3d at 764. This case, then, does not turn on whether Dr. Klein should be considered a treating physician; it turns on whether the ALJ's decision fails to consider a relevant opinion of Dr. Klein that is also inconsistent with the

RFC.[3]

Clearly, the ALJ spilled little ink on the subject of Dr. Klein. She only mentions him twice. The first time she notes that Dr. Klein completed a Long Term Care Medical Assessment of Ms. Oceguera, which "resulted in her brother's assignment to be a paid in-home caregiver." AR 15. Then, later, when discussing the various medical evaluations of Ms. Oceguera, the ALJ opines:

> Dr. Klein apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to accept uncritically as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. This opinion is also inconsistent with the claimant's admitted activities of daily living, which have already been described in this decision.

This statement is enigmatic because, while critical of Dr. Klein, the ALJ never specifically sets forth which, if any, of Dr. Klein's opinions she is rejecting.

Dr. Klein treated Ms. Oceguera for abdominal pain, vision difficulties, headaches, and anxiety. He opined that she needed help with ambulation, transfer, personal hygiene, and control safety due to her severe chronic pain, anxiety disorder, and uncontrolled seizure disorder. In making these diagnoses, he noted, by checking boxes on a form, that Ms. Oceguera had disoriented thought patterns and avoided or acted inappropriately in social situations. While evidence that Ms. Oceguera's could drive, care for her children, handle her financial affairs, and take on-line college course work might conflict with Dr. Klein's opinions that Ms. Oceguera needed help with ambulation, transfer, personal hygiene, and control safety,  these behaviors do

---

[3] Respondent argues that Dr. Klein's Long Term Care Medical Assessment is not a "medical opinion." "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. ¶ 404.1527(a)(2). This definition clearly encompasses Dr. Klein's statements that Ms. Oceguera needs help with certain functions and that she suffers from certain ailments, such as anxiety and epilepsy. It is undisputed that he offered these statements about her physical and mental conditions based on his interactions with her as her doctor. Respondent does not cite any case law that would support a conclusion that statements made in this context can be deemed not "medical" in nature.

not belie the claim that Ms. Oceguera suffers from social anxiety. Thus, although the ALJ may have reasonably concluded that Ms. Oceguera's testimony undermined **some** of Dr. Klein's opinions, she did not, as required, **specifically** weigh the evidence and state which opinions she was accepting or rejecting. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Therefore, the Court cannot affirm the ALJ's conclusion that all or some unidentified portion of Dr. Klein's opinions were controverted by Ms. Oceguera's "admitted activities of daily living." *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (reviewing courts "may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts.").

Nor does the ALJ's speculation about Dr. Klein's uncritical reliance on Ms. Oceguera's representations fix this deficiency. Reliance on the subjective statements of a claimant is not a sufficient basis, standing alone, for disregarding a medical opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."); *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor [sic] evidentiary basis for either of these findings.").[4]

---

[4] Citing *White v. Barnhart*, 287 F.3d 903, 906 (10th Cir. 2002), Respondent contends that an "ALJ can discount . . . the opinion of a treating physician where it is based on a claimant's subjective complaints." This is an incorrect statement of the law. In *White*, the Tenth Circuit affirmed an ALJ decision to reject the opinion of a treating physician where the ALJ reasoned that the treating physician's opinion was inconsistent with the more thorough findings of the consulting physicians, the treating physician's opinion was inconsistent with her contemporaneous examination of the claimant, the treating physician's assessment of the claimant was based on subjective assertions rather than objective medical evidence, and the treating physician had only a brief relationship with the claimant. *Id.*

Like in *Langley*, the ALJ failed to articulate any evidentiary reason for concluding that Dr. Klein believed Ms. Oceguera's subjective statements "uncritically." Moreover, to the extent Dr. Klein did rely on Ms. Oceguera's reports in forming an opinion regarding her mental health, this is to be expected and is not a sound reason for rejecting his conclusions. As the Tenth Circuit has explained, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (holding that an ALJ may not reject the opinion of a consulting psychiatrist merely because the psychiatrist relied on the statements of the claimant).  Thus, neither of the ALJ's reasons for criticizing Dr. Klein would justify rejecting his opinions entirely.  Nor do they clarify (1) what parts of Dr. Klein's Long Term Assessment the ALJ intended to accept or reject and (2) what weight, if any, the ALJ gave to Dr. Klein's other reports.[5]

Normally, an ALJ error in the treatment of a medical opinion requires the reviewing court to reverse and remand the case for further proceedings. There is, however, a harmless error exception to this rule. "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-579 (10th Cir. 2014).  Even when an ALJ

---

at 906-907. Under these circumstances, it may be proper for an ALJ to disregard a medical opinion. It is not, however, acceptable to reject an **uncontroverted** medical opinion for the sole reason that the medical provider considered or accepted a claimant's subjective statements in forming this opinion. *See McGoffin*, 288 F.3d at 152; *Langley*, 373 F.3d at 1121; *Miranda v. Barnhart*, 205 F. App'x 638, 641 (10th Cir. 2005) ("[I]t is disturbing that the ALJ 'second-guessed' Dr. Marten's diagnosis by discounting his assessment primarily because it was based on Mr. Miranda's sometimes inconsistent, subjective statements. . . . The ALJ's approach impermissibly put him in the position of judging a medical professional on the assessment of medical data, in this case Mr. Miranda's statements. It is not the ALJ's prerogative to substitute his own judgment for that of Dr. Marten.").

[5] In making this determination, the Court is not forming an opinion about whether a valid reason for rejecting some of Dr. Klein's opinions does in fact exist. For example, because "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself," *Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007), the Court has not considered Respondent's argument that the ALJ properly rejected the Long Term Care Assessment because the findings on this form "did not correspond with [Dr. Klein's] clinical examination findings" (*doc. 27* at 9). Even if this was a proper basis for rejecting Dr. Klein's opinions, this would not change the fact that the ALJ erred by failing to provide specific and legitimate reasons, amenable to review, for the rejection.

improperly rejects a medical opinion, a claimant is not entitled to a reversal of a denial of benefits if "giving greater weight to the opinion would not have helped" the claimant. *Id.* Even if the ALJ gave Dr. Klein's treatment records greater weight, this would not have helped Ms. Ocegura.

Dr. Klein's treatment records indicate that Ms. Oceguera suffered from a one-time pulmonary embolism, chronic epilepsy, anxiety, abdominal pain, headaches, and unexplained vision impairment. The ALJ's RFC evaluation accounts for most of these impairments and Ms. Oceguera does not argue that the others, such as the vision impairment, affected her functioning. *See Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (unpublished) (the ALJ's failure to account for certain medical problems was not reversible error, where the claimant did not identify how the omitted medical problems contributed to her alleged disability).

As for the Long Term Care Assessment, the Court does not find Dr. Klein's comments regarding Ms. Oceguera's mental and physical conditions to be inconsistent with the RFC or with the findings of the other medical professionals on whom the ALJ relied, such as Dr. Reed and the doctors at St. Martin's Hospitality Center. Notably, Dr. Klein never draws any direct conclusions about Ms. Oceguera's ability to work or her need for personal in-home health care. He merely reports, in check-box form, his assessment of Ms. Oceguera's health. For instance, he reports that she has anxiety, avoids interpersonal interactions, and has disoriented mental processes. This assessment is consistent with Dr. Reed's diagnoses of generalized mood disorder and dependent traits. It is consistent with St. Martin's assessment that Ms. Oceguera has chronic posttraumatic stress disorder and recurrent major depressive disorder with otherwise average intellectual functioning. And, it is consistent with the ALJ's RFC finding which limited Ms. Oceguera to following simple task and simple instructions, with only occasional work-place

changes, and only superficial contact with supervisors and co-workers. Because Dr. Klein's treatment of Ms. Oceguera is entirely consistent with the RFC, the Court cannot reverse the ALJ on grounds that she failed to consider the limited information Dr. Klein provided.

### B. The ALJ properly incorporated the opinion of Dr. Reed into her calculation of Ms. Oceguera's RFC.

Ms. Oceguera also argues that the ALJ mishandled the evaluation of Dr. Reed's medical opinion. Specifically, Ms. Oceguera complains that, even though the ALJ claimed that she was giving great weight to the opinion of Dr. Reed, the ALJ failed to incorporate the limitations noted in Dr. Reed's psychological report into the RFC. Stated simply, Ms. Oceguera contends that the ALJ's RFC determination is inconsistent with Dr. Reed's report.

The Court does not find this argument persuasive. Dr. Reed found that Ms. Oceguera had moderate limitations in the following capacities: (1) understanding and recalling detailed instructions, (2) carrying out instructions, (3) concentrating and persisting at basic tasks, (4) interacting with supervisors, (5) adapting to work-place changes, and (6) taking public transportation to unfamiliar locations. Additionally, he found that she had mild limitations in the following capacities: (1) understanding and recalling simple instructions, (2) maintaining attention and concentration, (3) interacting with the general public and with co-workers, and (4) recognizing and reacting to normal hazards. The RFC specifically incorporates these limitations by noting that Ms. Oceguera has trouble "understanding, remembering, and carrying out simple instructions," maintaining attention and concentration without redirection, responding to changes in the routine work setting, and interacting with supervisors and co-workers on more than a superficial level. AR 13.

Ms. Oceguera may believe that these limitations are more debilitating than the ALJ determined, but this is not grounds for reversal. *See Oldham*, 509 F.3d at 1257 (on appeal courts

14

"review only the sufficiency of the evidence, not its weight"). Here, the ALJ incorporated Dr. Reed's findings into the RFC. While a different individual may have interpreted Dr. Reed's report in a manner that was more favorable for Ms. Oceguera, this is not a legal error requiring reversal and remand. Substantial evidence supports the ALJ's ultimate determination.  Further, to the extent that Ms. Oceguera faults the ALJ for not outlining, in detail, the connection between the RFC and Dr. Reed's findings (see *doc. 28* at 4), this argument is without merit. "[A]n ALJ is not required to discuss every piece of evidence" that is consistent with her findings. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  In this case, the connection between Dr. Reed's findings and the RFC are readily apparent.

    IT IS THEREFORE ORDERED that Claimant Starr Rose Oceguera's Motion to Remand (*doc. 22*) is denied.

*[Signature: Steve Yarbrough]*